## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**DAVID SOLAN,**

     Plaintiff,

v.                               Civil Action No. **3:09CV643**

**DR. BENJAMIN RICE,** *et al.,*

     Defendants.

## MEMORANDUM OPINION

David Solan, a federal inmate proceeding *pro se* and *in forma pauperis*, filed this *Bivens*[1]

action. The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and

1915A. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1343(a)(3).

## I. PROCEDURAL HISTORY

The Magistrate Judge made the following findings and recommendations:

### Preliminary Review

     This Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (*quoting Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

     "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## Summary of Allegations

Solan is a 67-year-old federal inmate. Both Solan's father and grandfather died of cancer. In the 1960s and 1970s Solan was diagnosed with and treated for thyroid cancer. Solan underwent "about 11 procedures all told on the right side of his neck, head, and shoulders and one on the left side of his neck" in an effort to remove all "cancerous tissue in his body." (Am. Compl. ¶ 6.) According to Solan, if he "remains cancer-free there should be no active thyroid tissue anywhere in his body." (*Id.* at ¶ 9.)

After Solan's incarceration in the Bureau of Prisons ("BOP") in 1992, BOP officials placed Solan on "'chronic care' medical status . . . [(1)] to monitor the possible recurrence of (presumably thyroid) cancer and to ensure that his thyroid hormone blood serum levels were properly maintained." (*Id.* at ¶ 11.) Nevertheless, between "1992 . . [and] May 20, 2010, the BOP had not afforded the Plaintiff ANY test for the recurrence of his thyroid cancer (no radioactive iodine uptake scan and just one quantitative thyroglobulin serum bloodtest[sic] on the latter date)." (*Id.*)

2

In 2009, Solan began to experience various symptoms that allegedly are associated with the return of cancer activity, such as a bump under his arm, weight loss, frequent colds, and infections. Between March and May of 2009, Solan met with Dr. Rice, explaining his symptoms and expressing his concern that he might have thyroid cancer. According to Solon, Dr. Rice refused to request a radioactive iodine test or the appropriate blood test to determine whether Solan had thyroid cancer. Solan explains that, in addition to a radioactive iodine test, "[c]ancer recurrences can also be checked by looking for levels of thyroglobulin in the patient's blood after all his thyroid tissue has presumably been removed." (*Id.* at ¶ 28.) According to Solan, "[u]nder no circumstances, however, is a test for thyroglobulin AB to be used as a substitute for testing for the actual thyroglobulin blood levels of thyroid cancer survivor." (*Id.* at ¶ 30.) Nevertheless, Dr. Rice merely conducted blood tests for thyroglobulin AB, instead of thyroglobulin. When the tests for thyroglobulin AB came back normal, Dr. Rice informed Solan, "'Your labs were normal.'" (*Id.* at ¶ 41.) Solan asserts that this response "was both deceptive and inadequate." (*Id.*)

"Dr. Rice left FCI Petersburg on November 13, 2009 and Plaintiff believes that Dr. Suhasini N. Shah . . . was his successor in treating the Plaintiff." (*Id.* at ¶ 44.) Dr. Shah "continued the attitude of deliberate indifference to this serious medical need by doing nothing else than scheduling an ultrasound of Plaintiff's thyroid bed area." (*Id.*) Solan contends that this test "was patently worthless" in determining whether his thyroid cancer had recurred. (*Id.*)

Solan filed grievances regarding the failure to order the appropriate diagnostic tests for the possible recurrence of his thyroid cancer. Warden Stansberry, Regional Director White, and Director Lappin responded to these grievances. Stansberry, White, and Lappin failed to order further evaluation of Solan or direct the medical department to "get a second opinion with regards to Plaintiff's thyroid cancer diagnostic needs." (*Id.* ¶ 58.)

On January 14, 2010, Solan was transferred to the Fort Dix Correctional Complex, a federal prison in New Jersey. Dr. Sulayman ordered two blood tests for Solan a "'c-CEA' and [a] 't-Thyroglobulin antibody screen,' both of which were presumably for cancer, but, again, the latter of which, by itself, was totally inappropriate to test for a recurrence of thyroid cancer." (*Id.* at ¶ 45.)

On March 19, 2010, Dr. Lopez examined Solan and recorded in Solan's chart that Solan was sure his cancer had returned. Dr. Lopez "assured the Plaintiff that a thyroglobulin bloodtest would indeed be appropriate for someone of his age and with his history of thyroid cancer." (*Id.* ¶ 48.) Nevertheless, when Dr. Lopez attempted to order the test for Solan on her computer, she experienced considerable difficulty. Eventually, Dr. Lopez was able to order the blood test. On May 20, 2010, Solan received the test. The results of the test "are fairly clear: Plaintiff does not have measurable basal levels of thyroglobulin in his blood. Probably there is no active cancerous thyroid tissue anywhere in his body at this time. His hyperthyroid symptoms were probably due to too large a dose of levothyroxine being prescribed for him." (*Id.* ¶ 50.)

3

Solan contends that the delay in ordering the appropriate test "caused him to suffer great psychological stress and anxiety." (*Id.* at ¶ 66.) Solan demands nominal and punitive damages. Solan also requests injunctive relief in the form of "appropriate medical care for the Plaintiff in the future while he remains in BOP custody." (*Id.* at ¶ 69.)

Solan contends that Dr. Rice, Dr. Shah, Warden Stansberry, Regional Director White, and Director Lappin are liable to him because they "contributed to some official BOP policy to deny cancer diagnostic procedures to those inmates, like the Plaintiff, with a history of . . . thyroid cancer." (*Id.* ¶ 54.) Solan further explains that although each of these Defendants was aware of his medical history, they were deliberately indifferent to the need to order the appropriate diagnostic test to ascertain whether he had thyroid cancer.

**Analysis**

In order to state an Eighth Amendment claim, a plaintiff must allege facts that suggest: (1) that objectively the deprivation suffered or harm inflicted was "'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (*quoting Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (*quoting Strickler*, 989 F.2d at 1381). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (*citing Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

Here, Solan has failed to allege facts that indicate the delay in providing him with a thyroglobulin blood test was sufficiently serious.[2] *See De'Lonta*, 330 F.3d at 634. Where an Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must allege facts that suggest "'that the delay resulted in substantial harm.'" *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 n.13 (4th Cir.

---

[2] It is also doubtful that Solan has alleged facts sufficient to satisfy the subjective component of an Eighth Amendment claim. "The Eighth Amendment's prohibition on cruel and unusual punishment is not violated when a doctor simply resolves 'the question whether additional diagnostic techniques or forms of treatment is indicated.'" *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) (*quoting Estelle*, 429 U.S. at 107).

4

2008) (*quoting Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)); *see Smith v. FCM-MTC Med., LLC.*, 3:10CV352, 2011 WL 1085975, at \*9 (E.D. Va. Mar. 21, 2011). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citing cases). Solan has failed to allege any facts that indicate he was substantially harmed by the delay in the provision of the blood test he sought. *See Haden v. Green*, No. 10-cv-00515-PAB-KMT, 2011 WL 1085328, at \*5 (D. Colo. Jan. 12, 2011) (concluding anxiety attacks as the result of a delay in the provision of medication did not satisfy substantial harm requirement); *see In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999) ("Depression and anxiety are unfortunate concomitants of incarceration; they do not, however, typically constitute the 'extreme deprivations . . . required to make out a conditions-of-confinement claim.'" (*quoting Hudson*, 503 U.S. at 8–9)). Thus, Solan has failed to state a claim for denial of his rights under the Eighth Amendment.[3] Accordingly, it is RECOMMENDED the action be DISMISSED.

(June 1, 2011 Report and Recommendation.) The Court advised Solan that he could file objections or an amended complaint within fourteen (14) days of the date of entry thereof. On June 23, 2011, Solan filed objections.

## II. STANDARD OF REVIEW

"The magistrate makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court." *Estrada v. Witkowski*, 816 F. Supp. 408, 410 (D.S.C. 1993) (*citing Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.

---

[3] Solan also failed to adequately plead a claim for injunctive relief to prevent a future Eighth Amendment violation. To state such a claim, a plaintiff must allege facts that suggest he currently faces "an objectively intolerable risk of harm." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). The Supreme Court has emphasized "the conditions presenting the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Baze v. Rees*, 553 U.S. 35, 50 (2008) (*quoting Helling v. McKinney*, 509 U.S. 25, 33, 34–35 (1993)). Solan has failed to allege facts that suggest he is in any imminent danger because of the level of medical care provided by BOP officials.

§ 636(b)(1). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). In the absence of a specific written objection, this Court may adopt a magistrate judge's recommendation without conducting a *de novo* review. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

### III. SOLAN'S OBJECTIONS

In his objections, Solan challenges the conclusion that he fails to allege sufficient facts to support an Eighth Amendment claim. Solan contends, regardless of whether he sustained any injury, "a substantial risk of serious harm, without more, [is] enough . . . ." (Pl.'s Objs. 2.) Solan insists, "The subjective component of knowledge of RISK of serious medical harm trumps the objective prong of whether substantial physical harm was actually perpetrated by the defendants." (*Id.*). Solan is incorrect.

In order to state an Eighth Amendment claim, an inmate must allege facts that suggest that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (*quoting Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (*citing Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (*quoting Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). While allegations supporting a plausible inference of

6

deliberate indifference by prison officials are necessary to state an Eighth Amendment claim, such allegations, standing alone, are not sufficient. *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) ("If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment.").[4] Solan has failed to allege facts that suggest the delay in providing him with the thyroglobulin blood test satisfies the objective component for an Eighth Amendment claim. Solan's objections will be OVERRULED. The Report and Recommendation will be ACCEPTED AND ADOPTED. The action will be DISMISSED WITHOUT PREJUDICE. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 7/21/11
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge

---

[4] There is a limited exception to this rule when an inmate alleges that his conditions of confinement, such as continued exposure to high amounts of environmental tobacco smoke, pose an unreasonable risk of serious damage to his future health. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). Solan, however, has not alleged facts that suggest the delay in providing the thyroglobulin bloodtest exposed him to an unreasonable risk of serious damage to his future health.